SCOTT N. SCHOOLS (SCBN 9990)
United States Attorney

BRIAN J. STRETCH (CSBN 163973)
Chief, Criminal Division

PATRICIA J. KENNEY (CSBN 130238)
Assistant United States Attorney

450 Golden Gate Avenue
San Francisco, CA 94102
Telephone: 415.436.6857
Facsimile:  415.436.6748
Email: patricia.kenney@usdoj.gov

Attorneys for United States of America

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>(1) APPROXIMATELY $29,900 IN UNITED STATES CURRENCY AND (2) APPROXIMATELY $21,000 IN UNITED STATES CURRENCY,<br><br>　　　　　Defendants.<br><br>DAVID TENNENBAUM<br>And GREGORY BLANK,<br><br>　　　　　Claimants. | No. 07-2755 JL<br><br>JOINT CASE MANAGEMENT STATEMENT<br><br>Date:  October 10, 2007<br>Time:  10:30 a.m.<br>Place:  Courtroom F, 15th Floor |

1.  **The basis for this Court's subject-matter jurisdiction and whether any issue exists regarding personal jurisdiction or venue.**

This is a civil forfeiture action brought under 28 U.S.C. §§ 1345 and 1355(a), and 21 U.S.C. § 881(a)(6). The United States has given proper notice. *See* Rule G(4), Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions; Certificate of Service, filed June 1, 2007; Proof of Publication, filed July 31, 2007.

1   On July 23, 2007, David Tennebaum filed a claim under penalty of perjury in which he
2   claims he is the owner of defendant $29,900. The same day, Gregory Blank filed a claim under
3   penalty of perjury claiming he is the owner of defendant $21,000. Subsequently, on August 10,
4   2007, claimants Tennebaum and Blank filed Answers.

5
6   **2.    A brief description of the case and defenses and description of any related proceeding, including any administrative proceedings.**

7   **The United States's Position**:

8   In its Complaint for Forfeiture, the United States alleges detailed information such that,
9   based on a totality of the circumstances, the above captioned defendant $29,900 and defendant
10  $21,000 are subject to forfeiture as money furnished or intended to be furnished by a person in
11  exchange for a controlled substance, or money traceable to such an exchange, or money used or
12  intended to be used to facilitate a violation Subchapter I, Chapter 13 of Title 21 United States
13  Code. The totality of the circumstances include the inconsistent statements, the obvious smell of
14  marijuana as well as the dog sniff by a trained and certified narcotics canine, the manner of
15  packing defendants and the denominations of defendants.

16  Specifically, on or about January 12, 2007, DEA received detailed information that
17  Gregory Blank ("BLANK") was traveling from John F. Kennedy International Airport in New
18  York to Oakland International Airport in Oakland, California ("OAK"), and was carrying a large
19  amount of United States Currency. BLANK told a Transportation Security Administration
20  employee at JFK that the large amount of currency had been won in a World Series Poker
21  Tournament in Atlantic City, New Jersey and that he was on his way, via Oakland, to Las Vegas
22  to gamble. BLANK was described as a white male, wearing a brown Yankee's hat, blue pull
23  over sweater, blue jeans and brown/white Nike shoes.

24  At approximately 10:15 p.m., the DEA Task Force Agents observed BLANK exit
25  Gate 9A with another white male later identified as David Tennenbaum ("TENNENBAUM").
26  Special Agent ("S/A") Willie Byrd and S/A Jay Dial approached BLANK, identified themselves
27  as DEA agents by showing their credentials and conducted a consensual encounter with BLANK.
28  At the same time, G/S Martin and S/A Michael Tolliver approached TENNENBAUM, identified

JCMS
No. 07-2755                                2

1  themselves as DEA agents by showing their credentials and conducted a consensual encounter
2  with TENNENBAUM.
3        S/A Byrd advised BLANK that he was not under arrest and asked if he could ask BLANK
4  a few questions. BLANK said "yes." S/A Byrd asked BLANK about his travel itinerary.
5  BLANK stated that he had flown to OAK to meet a friend, named Jason Tokayer
6  ("TOKAYER"), who had attends The University of Southern California. Now that the plane had
7  landed, BLANK planned to call TOKAYER at 201.414.3072. BLANK and TOKAYER planned
8  to rent a vehicle to drive to Los Angeles to gamble at a casino and, if things went well, they
9  would drive to Vegas and return to Oakland for a return flight to New York. S/A Byrd asked
10 BLANK if he currently had illegal drugs or a large amount of United States Currency in his
11 possession. BLANK replied "Ok, I know what this is about and yes, I have money in my bag."
12 S/A Byrd asked BLANK if agents could search his bag, and BLANK replied "yes." S/A Dial
13 searched BLANK's bag while S/A Byrd continued to question him. S/A Byrd asked BLANK if
14 he had been questioned by anyone before and, if so, where and when. Blank stated "Yes, in New
15 York by TSA." S/A Byrd asked BLANK if he was traveling alone, and Blank stated "No" that
16 he was on the same flight as his childhood friend, TENNENBAUM. TENNENBAUM, however,
17 had come to Oakland to set up a caterer business and that he might or might not hang out with
18 BLANK. S/A Dial found in BLANK's brown Johnston & Murphy shoe bag five bundles of
19 United States currency each wrapped with a rubber band. BLANK told the agents that the
20 currency was money received from his caterer business and that he had retrieved the currency
21 from his business safe for gambling money. BLANK stated that he was a business owner of a
22 deli/catering business in Manhattan called Ari's Deli that is located on Amsterdam Avenue, but
23 was unable to provide an address for the business. When asked about the amount of the United
24 States currency, BLANK said that was between $20,000 and $25,000, but that he was unsure of
25 the exact amount due to the fact that he does not keep receipts or records of the money that is
26 kept in the safe of his business. BLANK stated to the agents several times that he was very
27 nervous, and gave the agents 646.249.5667 as a contact cell telephone number for him.
28 ///

JCMS
No. 07-2755                        3

1    As mentioned, G/S Martin and S/A Tolliver also conducted a consensual encounter of
2  TENNENBAUM and asked him questions. In response, TENNENBAUM told them he was
3  currently a student at SUNY Binghamton and was traveling with BLANK to Oakland. Once in
4  Oakland, they were going to rent a vehicle, and travel to Los Angeles to meet a friend,
5  TOKAYER, who attends The University of Southern California. Afterwards they planned to go
6  to an unknown local Southern California casino to gamble. TENNENBAUM told agents that the
7  reason he flew to Oakland instead of Los Angeles was because when he told JetBlue he wanted
8  to fly to California, JetBlue said they had a good deal to Oakland, which his friend stated was
9  approximately a four hour drive to Los Angeles. TENNENBAUM stated to agents that he had
10 never been arrested.
11   When S/A Byrd came over, G/S Martin and S/A Tolliver told S/A Byrd what
12 TENNENBAUM had just said. S/A Byrd asked TENNENBAUM if he currently had any illegal
13 drugs or a large amount of United States currency in his possession. In response to additional
14 questions, TENNENBAUM stated that he had between $20,000 and $25,000 in his possession
15 and that the currency was in his backpack. S/A Byrd asked if the agents could search his
16 luggage, and TENNENBAUM replied "Yes." S/A Byrd searched TENNENBAUM's luggage
17 while S/A Tolliver continued to question TENNENBAUM. TENNENBAUM stated that he
18 received the money from his "wealthy parents" and playing cards at college. S/A Byrd located a
19 brown Johnston & Murphy shoe bag inside TENNENBAUM's back pack that contained five
20 large bundles of United States currency each wrapped in a rubber band. The Johnston & Murphy
21 shoe bag containing the United States currency was identical to that BLANKS had used to secret
22 defendant $21,000. While searching the TENNENBAUM's luggage, S/A Byrd could smell the
23 odor of marijuana on the clothes in the luggage. When asked about the odor, TENNENBAUM
24 replied that he was partying at school and his friends were smoking marijuana and that the smoke
25 might still be on his clothes. The currency was later seized pending investigation and counted.
26   While S/A Byrd was talking to TENNENBAUM, S/A Dial asked BLANK if he knew if
27 TENNENBAUM was carrying any large sums of money. BLANK stated that TENNENBAUM
28 told him that he was carrying some money with him. S/A Dial asked BLANK if the money

1  TENNENBAUM was carrying was actually BLANK's money. BLANK immediately looked
2  away, lost eye contact with S/A Dial and replied in a much lower volume, "no." S/A Dial waited
3  about one minute then asked again if the money TENNENBAUM was carrying was BLANK's.
4  BLANK responded in exactly the same manner, with no eye contact and lowered voice volume.
5      S/A Byrd explained to BLANK and TENNENBAUM that the currency was going to be
6  seized pending further investigation. The total currency in BLANK's bag became defendant
7  $21,000 in this civil forfeiture action. The denominations of defendant $21,000 were as follows:
8  96 x $100 dollar bills; 58 x $50 dollar bills; 422 x $20 dollar bills; 6 x $10 dollar bills. The
9  packaging and denominations of defendant $21,000 are consistent with those used for, or from,
10 the sale of illegal controlled substances. The currency in TENNENBAUM's bag became
11 defendant $29,900 in this civil forfeiture action. The denominations of defendant $29,900 were
12 as follows: 82 x $100 dollar bills; 123 x $50 dollar bills; 773 x $20 dollar bills; 9 x $10 dollar
13 bills. The packaging and denominations of defendant $29,900 are consistent with those used for,
14 or from, the sale of illegal controlled substances.
15     On January 13, 2007, at approximately 3:00 p.m., Task Force Officer Kevin O'Malley
16 had his certified narcotic detection canine "Elway" perform a search of a portion of the Baggage
17 Claim area where other luggage and bags were in addition to the two separately placed bags
18 containing defendant $29,900 and defendant $21,000. "Elway" conducted a systematic search of
19 the area and made a positive alert to the odor of narcotics coming from each of the separately
20 placed bags containing a defendant in this action. "Elway" makes a positive alert by barking and
21 scratching. This is an indication to TFO O'Malley that the odor or narcotics was emanating from
22 the bag. "Elway" is certified to detect heroin, cocaine, marijuana, hashish and
23 methamphetamine. TFO O'Malley has handled and trained "Elway" since March of 1997.
24 "Elway" has successfully located drugs over 300 times in past cases and in training.
25     On January 23, 2007, S/A Byrd through an administrative subpoena properly
26 obtained subscriber and toll analysis during the period from January 8, 2007 to January 17, 2007
27 for the T-Mobile cellular number which BLANK provided S/A Byrd as a contact number.
28 Although BLANK told agents he planned immediately to call a his friend Joseph TOKAYER

JCMS
No. 07-2755                                 5

1  after getting off the plane at 201.414.3072, the toll records for BLANK's cell phone show that
2  BLANK never contacted TOKAYER on his cell at any time on the January 12 after BLANK
3  arrived or at any time during the next five days. Toll analysis reflects that one of the outgoing
4  calls made from BLANK's cell phone on January 13, 2007, the day after defendants were seized,
5  was to the National Organization for the Reform of Marijuana Laws ("NORML").
6      On January 30, 2007, DEA Task Force Agent Kevin Ward arrived at the Ari's
7  Deli located at 2566 Amsterdam Avenue, New York, New York, to conduct an interview with
8  Ari White, who acknowledged that he has been the owner of Ari's for two years. Although White
9  admitted that he had known BLANK since childhood, White told TFA Ward that he had not seen
10 or heard from BLANK in the past year. White stated that BLANK never had any ownership of
11 Ari's, and that White is the sole owner. TFA Ward confirmed this from a consumers license and
12 a health department license displayed inside of the deli which listed White as the sole owner.
13 White told TFA Ward that he borrowed $10,000 from BLANK to get his deli business started
14 and that he currently only owes BLANK $2,500.
15     Due to the totality of the circumstances, defendant $29,900 and defendant $21,000
16 in United States currency was seized as money furnished or intended to be furnished by a person
17 in exchange for a controlled substance, or traceable to such an exchange, or money used or
18 intended to be used to facilitate a violation of Subchapter I, Chapter 13 of Title 21 United States
19 Code.
20     **Claimants BLANK's and TENNEBAUM's Position**:
21     Claimants deny the seized money is connected to illegal drug transactions or activities.
22     3.    **A brief summary of the proceedings to date, including whether there has been full and timely compliance with the initial disclosure requirements of Federal Rules of Civil Procedure 26.**
23
24     The initial disclosure requirements of Rule 26 do not apply in forfeiture actions. Rule
25 26(a)(1)(E)(ii), Federal Rules of Civil Procedure.
26     4.    **The extent to which new parties will be added or existing parties deleted.**
27     Neither the United States nor claimants are aware of other parties to be added or deleted.
28

JCMS
No. 07-2755                          6

1      5.    **The scope of discovery to date and, separately, the scope yet anticipated; what limits should be imposed on discovery; and what should be the proposed discovery plan.**

3      **The United States's Plan**:

The United States plans to promulgate written discovery – short sets of requests for admissions, interrogatories and document requests. Depending on the responses, other discovery may be sought. Thereafter, the United State plans to take the depositions of claimants, and perhaps others presently unknown.

**Claimant BLANK and TENNEBAUM's Position**:

Claimants do not oppose the Government's proposed discovery plan. At this time, claimants do not intend to take discovery.

    6.    **What damages and other relief are sought and what method is used to compute damages.**

Because this is a forfeiture action, no damages are sought. The United States seeks to forfeit defendant $29,900 and defendant $21,000.

    7.    **ADR efforts to date and a specific ADR plan for the case.**

Claimants are in the process of gathering additional information and providing it to the United States in order to open a dialogue about whether this case can be resolved. The United States and claimants have not discussed the use of ADR in this case. The United States submits that ADR at this juncture would be premature.

    8.    **Which parties consent to assignment of the case to a magistrate judge.**

The United States and claimants have filed consent forms allowing this case to be heard for all purposes by a magistrate judge with appeal, if any, directly to the Ninth Circuit.

    9.    **A service list for all counsel that includes telephone and fax numbers.**

///
///
///
///
///

JCMS
No. 07-2755                       7

Attorney for the United States:

Patricia J. Kenney
Assistant United States Attorney
450 Golden Gate Avenue, 9th Floor
San Francisco, CA 94102
Telephone: 415.436.6857
Facsimile:  415.436.6748
Email: Patricia.Kenney@usdoj.gov

Attorneys for claimants Tennebaum and Blank:

Stuart Hanlon
Sara Rief
Law Offices of Stuart Hanlon
179 11th Street, 2d floor
San Francisco, CA 94103
Telephone: 415.864.5600
Facsimile:  415.865.0376
Email: sara@stuartthanlonlaw.com

10. To the extent not addressed above, all other items set forth in Local Rule 16-10.

Nothing further.

IT IS SO STIPULATED:

Dated: October 1, 2007

PATRICIA KENNEY
Assistant United States Attorney

Dated: October 1, 2007

STUART HANLON
SARA RIEF
Attorneys for claimants
Gregory Blank and David Tennenbaum

PURSUANT TO THE FOREGOING STIPULATION, IT IS SO ORDERED ON THIS _____ DAY OF _____, 2007.

_____
HONORABLE JAMES LARSON
United States Magistrate Judge

Joint Case Mgmt. Stmt.
C 07-2755 JL

8